H. H. MILLER INDUSTRIES CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15721. Promulgated September 13, 1929.

*H. A. Mihills, C. P. A.*, for the petitioner.
*E. C. Lake, Esq.*, for the respondent.

**OPINION.**

LITTLETON : The first assignment of error is that the respondent excluded from invested capital for 1921, $124,375 representing the actual cash value on January 1, 1921, of intangibles consisting principally of patents paid in to the predecessor corporation in 1901 for $475,000 par value of capital stock. This amount is 25 per cent of the par value of the outstanding capital stock of the petitioner on January 1, 1921.

The patents which were paid in to the New Jersey corporation in 1901 for shares of stock of that corporation, and which had a value at the date paid in of $124,375, had all expired prior to 1921. No exhaustion for these patents was ever charged off on the books of account of the petitioner or its predecessor. Had such exhaustion been charged off, the surplus at December 31, 1920, would have been reduced by $124,375. The respondent has included in invested capital of 1921 the surplus shown by the books of account at Decem-

ber 31, 1920. By reason of this fact the respondent has in effect allowed the inclusion in invested capital of the $124,375 representing the value of patents originally paid in. In other words, the inclusion in invested capital of the amount claimed by the petitioner for intangibles paid in plus the corrected surplus (the book surplus reduced by $124,375 for exhaustion of patents) would not be an amount greater than that allowed by the respondent.

It is to be noted that the petitioner is a corporation which was organized in 1918, and which acquired the assets of the predecessor corporation. No contention was made by the petitioner that the reincorporation of the business under Ohio laws in 1918 operated to increase the invested capital. We think that no such contention could validly be made, since section 331 of the Revenue Act of 1918 would have effectually barred the inclusion in invested capital of any appreciation in the value of assets. Upon the record made, the determination of invested capital by the respondent for 1921 is sustained.

The second point in issue is the contention of the petitioner that it should be allowed a deduction from gross income on account of the exhaustion of Patent No. 945,570, which was issued to the New Jersey corporation in 1910. The deduction claimed is based on a March 1, 1913, value which the petitioner sought to establish. But in seeking to establish a value as of March 1, 1913, the fact seems to have been overlooked that the patent in question was owned by the New Jersey corporation on that date and was only acquired by the petitioner through the acquisition of the stock of the New Jersey corporation in 1918 and the subsequent liquidation of that corporation prior to 1921. Since this was an acquisition subsequent to March 1, 1913, cost to the petitioner would be the basis on which an allowance for the exhaustion thereof would be computed and as to this cost we have no satisfactory evidence from which we can make a finding. No dividends were ever paid by the petitioner or its predecessor on either the common or preferred stock and the surplus of the petitioner at December 31, 1920, which included not only the earnings of the petitioner for 1918, 1919, and 1920, but also the accumulated earnings of the New Jersey corporation from 1901 to 1918, does not make a showing on which we could predicate a cost to the petitioner of the patent in question. It is, of course, true that the greater part of the litigation which was instituted by the petitioner or its predecessor on account of alleged infringements of this patent was settled in favor of the validity of the patent. It further appears, however, that while suits were begun as early as 1911 on account of alleged infringements, the first to be decided by the courts was in 1920 in which a Federal District Court held in favor of the petitioner. This decision was affirmed by the Circuit Court of Appeals in 1925, and the Supreme Court denied a petition

for a writ of certiorari in the same year. In 1926 the losing party in the aforementioned suit paid to the petitioner $336,000 on account of the infringements which had taken place and, subsequently, on the basis of this decision other parties, who had likewise been infringing upon the patent, made settlement, paying to the petitioner substantial amounts on account thereof. The foregoing events, however, happened well subsequent to the date with which we are here concerned. And, too, we are not overlooking the fact that the patent in question marked a decided change in the ice cream industry and that apparently the only successful manner in which rival concerns could meet the petitioner in competition was by infringing on this patent, thus indicating something of value. It is also true that substantial amounts were expended in the development and protection of the patent in question, both prior and subsequent to its acquisition by the petitioner.

While the foregoing facts may indicate a potential value attaching to the patent in question, they afford little help in arriving at its definite cost to the petitioner at the date acquired. In fact, we have no facts from which we can determine either the value of the patent at date of acquisition or the value of whatever stock may have been exchanged therefor. Accordingly, we can not do other than deny the petitioner's claim for a deduction on account of the exhaustion thereof.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

---

SMITH, dissenting: I dissent from so much of the opinion of the Board as disallows any deduction from gross income for the exhaustion of Patent No. 945,570. The evidence establishes to my satisfaction that the patent had a cash value on March 1, 1913, of $400,000. It had a life of 13 years, 10 months, and 4 days from that date. The patent was the principal asset of value acquired from the New Jersey corporation. The patent had as great value in 1918 as on March 1, 1913, less the exhaustion sustained. Exhaustion was sustained at the rate of $28,915.68 per annum, which amount, in my opinion, is a reasonable allowance for exhaustion for 1921.

TRAMMELL agrees with this dissent.